[Civ. No. 25212.   First Dist., Div. One.   May 23, 1969.]

M. E. LORTZ et al., Plaintiffs and Appellants, v. RICHARD
J. CONNELL et al., Defendants and Respondents.

Cooper & Cooper and Richard L. Cooper for Plaintiffs and Appellants.

McKenzie, Arata & Maggini and Gordon McKenzie for Defendants and Respondents.

SIMS, J.—Plaintiff, Edward M. Lortz, who sought damages for breach of a contract under which he purchased a business in which he had been jointly interested with the defendants, has appealed from an adverse judgment[1] resulting from the granting of defendants' motion for judgment on the pleadings. He contends that the trial court erred in granting the motion because the complaint states facts sufficient to constitute a cause of action; that the court erred in considering the defendants' motion without notice to plaintiff and in con-

---

[1]Defendants interposed a motion for judgment on the pleadings when the case, which had been partially tried, was called for further trial on the issue of damages. The minutes reflect that the court granted the motion for judgment on the pleadings, and denied plaintiff's motion to amend for the reason that it felt, in the light of all the testimony, such amendment would not be in furtherance of justice. No formal judgment is contained in the record, but the defendants five days later gave notice of entry of judgment as of the date of the minute order. The notice of appeal refers to the judgment as entered as of the date of the minute order. The merits of the appeal were fully briefed and argued. An order granting a motion for judgment on the pleadings is not ordinarily appealable, and the appeal was subject to dismissal. (*Adohr Milk Farms, Inc.* v. *Love* (1967) 255 Cal.App.2d 366, 369 [63 Cal.Rptr. 123], and cases cited; 3 Witkin, Cal. Procedure (1954), Appeal, § 20, p. 2163.) The parties thereafter caused a proper judgment to be entered, and stipulated that the matter could be determined on the basis of the proceedings previously taken, with the notice of appeal to be considered a premature notice of appeal from the judgment as entered. (See, Cal. Rules of Court, rule 2(c); and cf. *Palazzi* v. *Air Cargo Terminals, Inc.* (1966) 244 Cal.App.2d 190, 192-193 [52 Cal.Rptr. 817].) The matter is therefore considered on the merits.

Plaintiff M. E. Lortz (see fn. 2, *infra*) also joined in the appeal. As he is not adversely affected by the rulings of the court which have been attacked (see fn. 2, *infra*) reference is made to plaintiff Edward M. Lortz in the singular.

sidering evidence and argument outside the scope of the complaint; and that the court erred in denying plaintiff's motion to amend his complaint.

As appears below, the crucial issue is whether or not the trial court abused its discretion in denying plaintiff's motion to amend his complaint. It is concluded that the complaint was insufficient on its face; that the trial court was not warranted in disregarding the record of a prior proceeding upon which plaintiff relied as establishing his performance under the contract; and that the court abused its discretion in denying the motion to amend. The judgment must be reversed.

*Sufficiency of the Complaint*

In the first amended complaint,[2] the plaintiff, Edward M. Lortz, alleged that on October 16, 1961 the defendants Connell entered into a written agreement with him for the sale and transfer to him of all of the Connells' interest in a logging company. Reference to the agreement reveals that the parties together with their attorneys, who now represent defendants, had incorporated the logging company some 22 months previously. The agreement provided for the sale to Lortz of the stock of the corporation which had all been issued to the Connells. The stock was to be held in escrow pending payment of a note to be executed for the $23,000 purchase price, due on or before December 31, 1962. The purchase price consisted of $10,000 which the Connells had paid on a logging contract, $1,992.38 which represented other advances made by them to the corporation, and the balance which was the price to be paid for the Connells' stock. Plaintiff's payments were integrated with the payments the corporation was obligated to make under the logging contract. Plaintiff, as purchaser, undertook to pay off loans that had been incurred for the purchase of equipment which had been transferred to the corporation, and on which Mr. Connell was personally liable. Other provisions dealing with the naming of officers to con-

---

[2]The amended complaint contains a cause of action for malicious prosecution, and a cause of action for conversion in each of which M. E. Lortz joined as a plaintiff. Following partial hearing of the case, the court granted defense motions for judgment on each of those counts. They are not at issue on this appeal. A cross-complaint filed by the defendants to recover the purchase price due under the agreement for the sale of the business was dismissed after the court had granted defendants' motion for judgment on the pleadings with respect to plaintiff Edward M. Lortz's remaining cause of action for breach of contract.

trol the corporation, the maintenance of the corporate bank account, and other miscellaneous matters were designed to protect the rights of the sellers in the event of any default by the purchaser before the purchase price was paid in full.

The plaintiff alleged that the defendants breached the agreement on or about January 20, 1962 in that they retook and seized possession of the logging company and all of its assets from the plaintiff, and that they caused him to be arrested to prevent his possession and management of the company. Plaintiff claimed damages for loss of assets of the corporation in the sum of $350,000, and for loss of profits in the sum of $100,000.

It is hornbook law that the essential elements to be pleaded in an action for breach of contract are: (1) the contract; (2) plaintiff's performance of the contract or excuse for nonperformance; (3) defendants' breach; and (4) the resulting damage to plaintiff. (See *Reichert* v. *General Ins. Co.* (1968) 68 Cal.2d 822, 830 [69 Cal.Rptr. 321, 442 P.2d 377]; *Daum* v. *Superior Court* (1964) 228 Cal.App.2d 283, 287 [39 Cal.Rptr. 443]; *Wise* v. *Southern Pac. Co.* (1963) 223 Cal.App.2d 50, 59 [35 Cal.Rptr. 652]; and 2 Witkin, Cal. Procedure (1954) Pleading, § 257, p. 1232.)

Plaintiff relies on the principle that prevention of performance by one party to a contract excuses performance by the other. (See *Pacific Venture Corp.* v. *Huey* (1940) 15 Cal.2d 711, 717 [104 P.2d 641]; *Rains* v. *Arnett* (1961) 189 Cal.App. 2d 337, 347-348 [11 Cal.Rptr. 299]; *Unruh* v. *Smith* (1954) 123 Cal.App.2d 431, 437 [267 P.2d 52]; and *Overton* v. *Vita-Food Corp.* (1949) 94 Cal.App.2d 367, 371 [210 P.2d 757]; Witkin, *op.cit.*, § 259, p. 1234.) In *Rains* v. *Arnett, supra,* the court stated, ''From the written agreement, the executed oral agreement and the statement of the trial judge, it well appears that the items that were paid for by plaintiff were to be paid from the profits, but it also appears, upon conflicting evidence, that defendant agreed to leave the equipment with plaintiff until the profits due defendant repaid the bills and advances in question. This he did not do. He personally took some of the equipment from plaintiff and allowed other equipment to be repossessed, thus preventing plaintiff from creating the fund out of which these sums were to be paid.

''A person cannot take advantage of his own act or omission to escape liability. If he prevents or makes impossible the performance or happening of a condition precedent, the condition is excused. [Citations.] We must assume, in support of

the judgment, that the court found that the creation of the fund from which the bills were to be paid was frustrated by the acts of the defendant and accordingly the condition was excused.'' (189 Cal.App.2d at pp. 347-348.)

Plaintiff, however, failed to allege any excuse for nonperformance. The allegation that defendants breached the agreement on January 30, 1962 must be taken as true for the purpose of evaluating the sufficiency of the pleading. (*Davis* v. *City of Santa Ana* (1952) 108 Cal.App.2d 669, 685 [239 P.2d 656].) Nevertheless, it does not indicate either that plaintiff performed all that he was obligated to perform prior to that date, or that defendants had prevented him from rendering such performance.

█ The pleadings must be liberally construed, and a motion for judgment on the pleadings should not be granted unless there is an entire absence of an essential allegation. (Code Civ. Proc., § 452; *Caras* v. *Parker* (1955) 131 Cal. App.2d 141, 142 [280 P.2d 226]; *Stockton Morris Plan Co.* v. *Mariposa County* (1950) 99 Cal.App.2d 210, 212 [221 P.2d 232]. See also *Wise* v. *Southern Pac. Co., supra,* 223 Cal.App. 2d 50, 59.) The allegations of seizure of the corporation and its assets, and of the arrest of plaintiff show facts which might excuse his further performance, but they do not reveal what was done by plaintiff prior to the alleged breach by defendants. There was a failure to set forth an essential allegation and the complaint was defective.

*Procedural Aspects of Defendants' Motion*

█ The record indicates that the case first came on for trial on or about November 10, 1966. On that date the trial was suspended so that the court could consider and determine the effect of a prior judgment between the same parties on defendants' right to present evidence that plaintiff had failed to perform the agreement. After considering the records of the prior action which were submitted to it and made a part of the record in this case, the trial court concluded that the findings in the prior action precluded the defendants from urging any alleged breach by plaintiff prior to March 1, 1962 (the date the prior action was filed) as a defense in the present action. The matter was set down for further hearing on the question of plaintiff's damages. When the matter came on for hearing the court acknowledged that it believed the evidence adduced at the first hearing in this case showed that the plaintiff was guilty of a breach of the contract prior to the

alleged breach by defendants. It reiterated that nevertheless it was bound to rule out any earlier breach by plaintiff because of the determination in the prior action.

Thereupon the defendants, in open court, interposed their motion for judgment on the pleadings. The defendants acknowledged that the defect in the amended complaint had not been discovered or urged earlier. The plaintiff observed that he had not had an opportunity to analyze the issue raised by the motion. He did not, however, object to the form or manner in which the motion had been made, nor did he request that the hearing on the motion be continued. He argued the merits of defendants' motion, and requested the court to permit an amendment of the complaint to conform to proof.

Under the circumstances related, plaintiff at this stage of the proceedings cannot complain of the manner or the form in which the motion was presented. He has not shown that he was denied an opportunity to be heard on the merits of the defendants' motion or on the merits of his motion to amend to conform to proof, or that he was prejudiced by the manner in which these motions were presented and argued before the court.

The argument on the two motions revolved about whether the plaintiff's proof of the prior judgment required the court to permit the amendment, or whether the evidence adduced at the earlier hearing of this case (not a part of the record on this appeal), which the court believed established a prior breach of the contract on the part of plaintiff, could be considered by the court on the issue of whether an amendment would be "in furtherance of justice." (See Code Civ. Proc., § 473.) This issue was resolved against the plaintiff and is the crucial question in this case.

█ It is generally stated that on a motion for judgment on the pleadings the court cannot consider any matter outside the complaint. (*Tracy* v. *Ferrera* (1956) 144 Cal.App.2d 827, 829 [301 P.2d 905] ; *Morris* v. *Harbor Boat Bldg. Co.* (1952) 112 Cal.App.2d 882, 886-887 [247 P.2d 589] ; *Douglass* v. *Dahm* (1950) 101 Cal.App.2d 125, 128-129 [224 P.2d 914] ; *Stockton Morris Plan Co.* v. *Mariposa County, supra,* 99 Cal. App.2d 210, 212-214.) █ Neither the former judgment (see *Tracy* v. *Ferrera, supra,* and *Douglass* v. *Dahm, supra*), nor the relevancy, competency or weight of the evidence produced in this action (see *Morris* v. *Harbor Boat Bldg. Co., supra*) was a proper matter for consideration on the merits of

the motion for judgment. Nevertheless, these matters were properly considered by the court in the exercise of its discretion in determining plaintiff's motion to amend.

*The Motion to Amend*

The general rule governing the right to amend in the face of a sustainable motion for judgment on the pleadings is stated in *Beverage* v. *Canton Placer Min. Co.* (1955) 43 Cal.2d 769 [278 P.2d 694], as follows: "The facts stated in the pleadings indicate that plaintiffs may have a good cause of action but that it has been defectively or imperfectly pleaded. Defendants did not call attention to these claimed defects either by demurrer or by duly noticed motion for judgment on the pleadings, although they had long known the condition of the pleadings preceding the trial. Under such conditions the trial court should not have granted the surprise motion, which attacked the pleadings for the first time at the time of trial, without first giving plaintiffs an opportunity to elect whether they would stand on their pleadings or amend them. (*MacIsaac* v. *Pozzo, supra,* 26 Cal.2d 809, 815 [161 P.2d 449].) Defendants' failure to give plaintiffs notice of their intention to attack the pleadings prior to the trial also excuses the failure of plaintiffs to go to the trial armed with formal amendments to offer to the court in the event that the pleadings are unexpectedly attacked. (*MacIsaac* v. *Pozzo, supra.*) And the fact that plaintiffs' motion to amend was defective in that it was more in the nature of a motion to amend to conform to the proof does not vitiate the power to permit an amendment. (Code Civ. Proc., § 472c; *MacIsaac* v. *Pozzo, supra,* 26 Cal.2d at p. 816.)" (43 Cal.2d at p. 778. See also *Daum* v. *Superior Court, supra,* 228 Cal.App.2d 283, 289; *Central Surety & Ins. Corp.* v. *Foley* (1962) 204 Cal.App.2d 738, 743 [22 Cal.Rptr. 504]; *Tracy* v. *Ferrera, supra,* 144 Cal.App.2d 827, 829; and *Unruh* v. *Smith, supra,* 123 Cal. App.2d 431, 437-438.)

The defendants contend that the situation in this case comes within the following principles: "Great liberality, it is true, should be exercised in allowing amendments to pleadings; but that liberality should only be displayed in furtherance of justice. (Code Civ. Proc., sec. 473.) This is always the controlling consideration before the trial court. . . . [B]ut so far from it having been an abuse of discretion in this case to refuse the one proposed, we should be more inclined to hold it that would have been an abuse to have allowed it. For it is not

sufficient that the new defense proposed be a legal defense; it should also be an equitable defense. [Citation.]'' *(Bank of. Woodland v. Heron* (1898) 122 Cal. 107, 109 [54 P. 537]. See also *Norton v. Bassett* (1910) 158 Cal. 425, 427-428 [111 P. 253]; and *Easton v. Geller* (1931) 116 Cal.App. 577, 580-581 [3 P.2d 74]; but cf. *Lilly-Brackett Co. v. Sonnemann* (1910) 157 Cal. 192, 196-197 [106 P. 715, 21 Ann.Cas. 1279]; and *Mackroth v. Sladky* (1915) 27 Cal.App. 112, 117 [148 P. 978].) In the *Woodland* case the defendant sought to amend to show that the mortgage upon which the plaintiff had sued was defectively acknowledged although its execution and acknowledgment had been originally admitted. The court held it was proper to deny the amendment because it would interject a new issue which might defeat the collection of what had been established to be a just debt.

It is necessary to examine the facts before the trial court in order to determine which one of the foregoing principles should govern.

There is no record of the evidence received at the first part of the trial of this case. In support of the trial court's ruling the court's account of that evidence as revealed by the proceedings on the two motions may be accepted as accurate. In the first place, it appears from the recitals of the court's interlocutory order setting the case for further hearing that it concluded that the defendants had probable cause to institute criminal proceedings against the plaintiffs, apparently because of their improper use of the corporate property and funds in which the defendants had an interest pending payment of the full purchase price. The court also stated, ''that it felt the evidence showed that plaintiffs had themselves breached the contract which they were seeking to enforce against defendants, and therefore it would be inclined to grant defendants' motion as to this count unless defendants were precluded from raising this defense by a prior action.'' The court reiterated this conclusion at the later hearing. Among the matters considered were the use of corporate funds for the plaintiff's independent Christmas tree sale operation; the failure to pay bills on certain equipment contracts; and the failure to deposit corporate funds in the corporate bank account. The court indicated that it concluded that the plaintiff had diverted funds in violation of the terms of the contract.

The court did rule as follows: ''. . . this court is bound by the finding in action No. 24439 in the Mendocino County

Superior Court that the contract 'has not been breached or defaulted by plaintiff in any manner whatsoever.' This finding precludes defendants in this action from urging plaintiffs alleged breaches prior to March 1, 1962 (the date the Mendocino complaint was filed) as a defense to plaintiffs' present claim for breach of contract.'' The record of the prior action which has been incorporated in the record of this case reveals that a complaint for declaratory relief was filed in Mendocino County on March 1, 1962; and that it was based on the same contract as that on which plaintiff seeks to recover damages in this action. It alleged: that the breach alleged in this action, the defendants' seizure of the corporation and its assets and the arrest of the plaintiff, had already occurred; and that the agreement had not been rescinded. The prayer read as follows: ''. . . plaintiff prays that a declaratory judgment be made and entered that on October 16, 1961 he purchased all of the assets and is the owner of C & L Logging Co., Inc. subject to the terms of the Exhibit 'A' herein; that defendants Richard J. Connell and Joan Connell be enjoined and restrained from interfering with the said corporation assets or the activities thereof except as provided for by the terms of Exhibit 'A'; for his costs of suit incurred herein including his attorney's fees; and for such other and further relief as this court deems just and proper.''

In a joint pretrial statement, approved by the court, the issues of the earlier action were set forth as follows: ''1. Whether defendants executed said contract; 2. Whether by virtue of said contract plaintiff purchased said corporation on October 16, 1961 and thereby acquired, or has acquired, any interest or equity therein; 3. Whether said contract has been rescinded and plaintiff no longer has any interest or equity in said corporation.'' From the Mendocino court's memorandum of opinion it appears that the controversy concerned the construction of a clause of the contract which provided that earlier payments would be made to the sellers if the other party to the logging contract agreed ''to waive further payments for 1961.'' The court stated, ''The primary question presented in this litigation is whether or not this clause meant that a deferment of payments to Mrs. Singley would constitute a waiver. Certainly it was not a waiver in the sense that Mrs. Singley abandoned her rights to the money accruing in 1961, however, the defendants claim that 'waiver' as used in the contract meant a deferment.'' It resolved this question,

and each of the issues presented by the pretrial statement, in favor of the purchaser.

Findings of fact and conclusions of law were signed and filed in which it was found that the allegations of the complaint reading ". . . plaintiff has not breached or defaulted in the performance of his part of the said agreement" were true, and it was concluded, ". . . the said contract was not and has not been . . . breached or defaulted by plaintiff. . . ." The judgment included a recital to the same effect.

The record of the current action reveals that although plaintiff's complaint failed to allege performance of and excuse for failure to perform, the defendants' answer alleged "that they were entitled to operate the C AND L LOGGING COMPANY, by reason of the breaches of the agreement committed by the plaintiffs herein." The respective pretrial statements of the parties and the pretrial conference order all succinctly referred to the issue raised by the cause of action for breach of a contract. The order recites in the language of plaintiff's pretrial statement, "Whether or not defendants breached a contract dated October 16, 1961 and if so the damages, if any, sustained by plaintiffs."

The action of the trial court in disregarding the earlier judgment cannot be countenanced. It has in effect set itself up as a court of review for the action of the Mendocino County court in the earlier proceedings, and, moreover, it has gone beyond ordinary principles of review, in that it has reexamined the facts upon which the earlier judgment was predicated. The ruling of the trial court cannot be justified for the reasons it advanced. The record does not reveal whether the plaintiff objected to the admission of the evidence upon which the court predicated its conclusion that the plaintiff violated the contract at the time the evidence was received. It does appear, however, that plaintiff did vigorously contend that the defendants were bound by the prior judgment on this issue. (See *Sutphin* v. *Speik* (1940) 15 Cal.2d 195, 201-202 [99 P.2d 652, 101 P.2d 497]; *Todhunter* v. *Smith* (1934) 219 Cal. 690, 694-695 [28 P.2d 916]; *Tevis* v. *Beigel* (1957) 156 Cal.App.2d 8, 12 [319 P.2d 98]; and 3 Witkin, Cal. Procedure (1954) Judgment, § 62, p. 1947.)

In *Todhunter* v. *Smith, supra,* the court ruled: "By virtue of the doctrine of *res judicata* the final determination of a court of competent jurisdiction necessarily affirming the existence of any fact is conclusive evidence of the existence of that fact when it is again in issue in subsequent litigation between

the same parties in the same or any other court. The facts decided in the first suit cannot be disputed or relitigated although the later suit is upon a different cause of action. [Citations.] The doctrine of *res judicata* has a double aspect. A former judgment operates as a bar against a second action upon the same cause, but in a later action upon a different claim or cause of action, it operates as an estoppel or conclusive adjudication as to such issues in the second action as were actually litigated and determined in the first action." (219 Cal. at pp. 694-695.) The trial court could not directly ·disregard this doctrine because it believed the earlier case was improperly decided. It is concluded that it cannot do so indirectly for the same reasons.

However, the logical application of the doctrine of collateral estoppel reveals a possible flaw in plaintiff's case. ■ As noted in *Sutphin* v. *Speik, supra:* ". . . the rule goes further. If the matter was within the scope of the action, related to the subject-matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. ■ Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigable." (15 Cal.2d at p. 202. See also, *Holmes* v. *David H. Bricker, Inc.* (1969) 70 Cal.2d 786, 789-790 [76 Cal.Rptr. 431, 452 P.2d 647]; *Reichert* v. *General Ins. Co., supra,* 68 Cal.2d 822, 831-832; *Abbott* v. *76 Land & Water Co.* (1911) 161 Cal. 42, 47-48 [118 P. 425]; and cf. *United States Fire Ins. Co.* v. *Johansen* (1969) 270 Cal.App.2d 824, 834-835 [76 Cal. Rptr. 174]; *Yates* v. *Kuhl* (1955) 130 Cal.App.2d 536, 539-540 [279 P.2d 563].)

This case is singularly similar to *Abbott* v. *76 Land & Water Co., supra.* There, as here, in the earlier action the seller claimed that the purchaser had no right to the property which was the subject of the sale. The purchaser, after establishing his rights in the first action, sought damages for the seller's breach in the second action. The court stated: "The defendant claimed in good faith and with apparently much ground for its claim, that the contract relied on by plaintiff's assignor did not entitle him to purchase the land. Be this as it may, the contract. so far as it related to the matter of the sale of the land, was single and entire. The total abandonment or

breach thereof by defendant gave plaintiff's assignor but a single cause of action, and this single cause of action could not be so split as to afford warrant for two or more actions. It is true that the vendee had an election of remedies. He might have brought an action to recover such damages as were caused him by the breach, or he might, as he did, bring his action for specific enforcement of the contract, and in such action obtain not only the specific enforcement of his contract, but also such damages as he was lawfully entitled to, for it is thoroughly settled that a court of equity taking jurisdiction for the purpose of specifically enforcing a contract takes full jurisdiction of all the rights of the parties, whether legal or equitable, and may award such legal damages as the vendee may have suffered by reason of the delay in performance. (See 2 Warvelle on Vendors, sec. 958; 36 Cyc. 753.) But, under elementary principles, he was bound to obtain all his relief on account of the breach in one action, and could not recover part in one and part in another. If he had brought his action at law for damages, thereby treating the contract as at an end, a judgment therein awarding him damages would have been conclusive on him as to the amount of damages sustained by reason of the breach, and a bar to any action for further damage on account thereof. Resorting as he did to an action in equity to compel specific performance of the contract, instead of an action at law for damages, the decree in his favor of the court having the power to give him all relief that he was entitled to on account of the breach is likewise conclusive and a bar to any subsequent action for relief based on the same contract. ▮ This is the necessary result of the application of the well settled principle that an entire claim arising either upon a contract or from a wrong cannot be divided and made the subject of several suits. In such a case it is no warrant for a second action that the party may not be able to actually prove in the first action all the items of the demand, or that all the damage may not then have been actually suffered. He is bound to prove in the first action not only such damage as has been actually suffered, but also such prospective damage by reason of the breach as he may be legally entitled to, for the judgment he recovers in such action will be a conclusive adjudication as to the total damage on account of the breach. (See generally on this subject 1 Sutherland on Damages, 3d ed., secs. 106, 108, 112, 113, 120.)'' (161 Cal. at pp. 47-48.)

▮ Section 1060 of the Code of Civil Procedure provides

in part, ". . . He may ask for a declaration of rights or duties, *either alone or with other relief*; and the court may make a binding declaration of such rights or duties, *whether or not further relief is or could be claimed at the time. . . .*" (Italics added.) Section 1062 provides: "The remedies provided by this chapter are cumulative, and shall not be construed as restricting any remedy, provisional or otherwise, provided by law for the benefit of any party to such action, and *no judgment under this chapter shall preclude any party from obtaining additional relief based upon the same facts.*" (Italics added.) In *Giese* v. *City of Los Angeles* (1946) 77 Cal.App.2d 431 [175 P.2d 562], the court concluded, on the basis of the foregoing provisions: "We fail to perceive wherein the well-known precept that equity abhors litigation by piecemeal and will prevent a multiplicity of suits by, whenever possible, settling and determining all differences between the parties and leaving nothing further to be litigated between them upon the same subject matter, can be successfully invoked in the instant proceeding." (77 Cal. App.2d at p. 436. See also *Dills* v. *Delira Corp.* (1956) 145 Cal.App.2d 124, 129 [302 P.2d 397]; and *Ho Gate Wah* v. *Fong Wan* (1953) 118 Cal.App.2d 159, 165 [257 P.2d 674].) In *Giese*, however, there was no present right to damages or any other coercive relief. The court observed, "The question presented herein is not whether respondent has served the requisite number of years or otherwise qualified himself for retirement under the Fire and Police Pension System, and is presently entitled to be retired with a fireman's pension. The question posed on this appeal is whether, under his present position, respondent is currently entitled to be classified as a person entitled to a fireman's pension when he elects to go on the retired list. Respondent was, therefore, merely seeking a judicial declaration of his present existing rights under the Fire and Police Pension System and was not petitioning the court to order him retired with such a pension." (77 Cal.App.2d at p. 436.)

In the forerunner of the instant case the right to damages for the interference by the sellers on January 30, 1962 had accrued when the declaratory relief action was filed on March 1, 1962. Under these circumstances, the damages could have been determined in that action. ■ Where other relief is indicated in an action for declaratory relief it is error, which may be raised on direct attack, to deny it in that action. In *Record etc. Co.* v. *Pageman Holding Corp.* (1954) 42 Cal.2d

227 [266 P.2d 1], the trial court found, in accordance with the plaintiff's assertions, that the plaintiff-buyer was not in default under the contract, but that the defendants' performance was defective and justified the buyer's withholding unconditional payment of the purchase price. The court stated, "The court should have completed the determination of the controversy to avoid further litigation. . . . It is true that defendant objected during the proceedings to broadening the scope of the determination and the court declared that defendant's action to recover the purchase price as well as plaintiff's action for damages were preserved, but because of the scope of the judgment with respect to plaintiff's rights in the property (it in effect specifically enforces the contract on behalf of plaintiff) justice requires that defendant's rights also be determined. The trial court has discretion as to the extent of the relief to be afforded in a proceeding for declaratory relief (5 Cal.Jur. 10-Yr.Supp. [1944 Rev.], Declaratory Relief, § 22 et seq.), but where a case is made for such relief the court should not deny it. (*Lord* v. *Garland*, 27 Cal.2d 840 . . .) Where a contract is specifically enforced the court should do complete justice. (23 Cal.Jur. 509 et seq.) That has not been done here." (42 Cal.2d at pp. 233-234. See also, *Amerson* v. *Christman* (1968) 261 Cal.App.2d 811, 823-824 [68 Cal.Rptr. 378] ; *Bertero* v. *National General Corp.* (1967) 254 Cal.App.2d 126, 135-138 [62 Cal.Rptr. 714] ; *Merigan* v. *Bauer* (1962) 206 Cal.App.2d 616, 621-622 [23 Cal.Rptr. 872].)

It must therefore be determined whether the special provisions governing an action for declaratory relief excuse the plaintiff's failure to assert his damages in the prior action. It is generally recognized that since coercive relief may or may not be requested in an action for declaratory relief, a party will not be barred from seeking such relief by further proceedings in the same or a new action. "Consequential or incidental relief may be obtained in an action in which a declaratory judgment is sought, but the failure to seek such relief in such action or suit does not constitute a bar to other proceedings to enforce the rights determined by the judgment, whether such other proceeding is by petition filed in the declaratory action or in a separate and independent suit or action subsequently filed, but predicated, however, upon the declaration of rights contained in the declaratory judgment." (2 Anderson, Actions for Declaratory Judgments (2d ed. 1951) § 461, p. 1103, citing *Winborn* v. *Doyle*

(1950) 190 Va. 867 [59 S.E.2d 90]. See also *Howe* v. *Nelson* (1965) 271 Minn. 296 [135 N.W.2d 687] ; Rest., Judgments, § 77, com. b. pp. 343-344; 22 Am.Jur.2d, Declaratory Judgments, § 102, p. 902; and cases collected Annotation, Declaratory Judgments—Res Judicata (1950) 10 A.L.R.2d 782, particularly § 3, pp. 787-789; Contra, *Lane* v. *Page* (1952) 126 Colo. 560 [251 P.2d 1078]. Cf. *Swanson* v. *Tearney* (1948) 87 Cal.App.2d 191, 195-196 [196 P.2d 49].)

A review of the issues raised in the Mendocino County action indicates that the prime concern at that time was the recovery of possession of the corporate assets which it was alleged the sellers were converting. The sellers attempted to justify their actions on the theories that there was either no contract for the sale of the lumber company, or, if there were, that it had been properly rescinded. ■■■ The salutary purpose of the declaratory relief provisions is to permit a prompt adjudication of the respective rights and obligations of the parties in order to relieve them from uncertainty and insecurity with respect to rights, status and other legal relations. (See Borchard, Declaratory Judgments (2d ed. 1941) ch. IV, pp. 277-292.) The general rule referred to above, which does not bar the right to subsequent coercive relief if it is not sought or litigated in the earlier action, promotes this purpose. It enables a party to get a prompt adjudication without a dispute over the damages suffered. In many cases further proceedings will be unnecessary because the right of the party who might claim damages is not established, or because if his right is established no damages ensue, or, if ensuing, damages may be established without further litigation. Such cases should compensate for those, which like the instant case, place an additional burden on the courts because they violate the rule against piecemeal litigation.

■■■ It is concluded that the present action for damages is not barred by the earlier action for declaratory relief; that plaintiff is entitled to rely on the findings, conclusions and judgment in that action as establishing his performance of the obligations of the contract which arose prior to March 1, 1962; and that it was an abuse of discretion to deny him the right to amend the complaint to show such established performance.

The judgment is reversed.

Molinari, P. J., and Elkington, J., concurred.